# KEENE CORP. *v.* UNITED STATES

No. 92–166.   Argued March 23, 1993—Decided May 24, 1993

*Richard D. Taranto* argued the cause for petitioner. With him on the briefs were *Joel I. Klein, John H. Kazanjian, Irene C. Warshauer, Stuart E. Rickerson,* and *John G. O'Brien.*

*Deputy Solicitor General Wallace* argued the cause for the United States. On the brief were *Acting Solicitor General Bryson, Assistant Attorney General Gerson, Deputy Solicitor General Mahoney, Robert A. Long, Jr.,* and *Barbara C. Biddle.**

---

*Briefs of *amici curiae* urging reversal were filed for the State of Alaska by *Charles E. Cole,* Attorney General, and *Ronald G. Birch;* for the State of Hawaii by *Robert A. Marks,* Attorney General, and *Steven S. Michaels,* Deputy Attorney General; for the Chamber of Commerce

JUSTICE SOUTER delivered the opinion of the Court.

Keene Corporation has been sued by thousands of plaintiffs alleging injury from exposure to asbestos fibers and dust released from products made by Keene and by a company it acquired. In trying to recoup some of the money it was paying to litigate and settle the cases, Keene filed two complaints against the United States in the Court of Federal Claims.[1] When it filed each complaint, however, Keene had a similar claim pending against the Government in another court. We hold that 28 U. S. C. § 1500 consequently precludes Court of Federal Claims jurisdiction over Keene's actions and affirm the dismissal of its complaints.

## I

Through its subsidiary Keene Building Products Corporation, Keene manufactured and sold thermal insulation and acoustical products containing asbestos, as did a company it acquired in 1968, Baldwin-Ehret-Hill, Inc. In the mid-

---

of the United States by *Herbert L. Fenster, Ray M. Aragon,* and *Robin S. Conrad;* for the Cheyenne-Arapaho Tribes of Oklahoma et al. by *Richard Dauphinais, Yvonne T. Knight, Patrice Kunesh,* and *Scott B. McElroy;* for Defenders of Property Rights by *Nancie G. Marzulla;* for Dico, Inc., by *Charles F. Lettow;* for the Pacific Legal Foundation et al. by *Ronald A. Zumbrun, James S. Burling,* and *R. S. Radford;* for Whitney Benefits, Inc., et al. by *George W. Miller, Walter A. Smith, Jr.,* and *Jonathan L. Abram;* and for the National Association of Home Builders by *Albert J. Beveridge III* and *Virginia S. Albrecht.*

*Don S. Willner* and *Thomas M. Buchanan* filed a brief for C. Robert Suess et al. as *amici curiae.*

[1] Keene actually filed its complaints in the old Court of Claims. Soon thereafter, Congress transferred the trial functions of the Court of Claims to a newly created "United States Claims Court." Federal Courts Improvement Act of 1982, § 133, 96 Stat. 39–41. The Claims Court has just been renamed the "United States Court of Federal Claims." See Court of Federal Claims Technical and Procedural Improvements Act of 1992, § 902, 106 Stat. 4516. To avoid confusion, we will refer to the trial court in this case by its latest name.

1970's, plaintiffs began suing Keene in tort, alleging injury or death from exposure to asbestos fibers. In a typical case filed against Keene and other defendants in the District Court for the Western District of Pennsylvania, *Miller,* v. *Johns-Manville Products Corp.*, No. 78–1283E, the plaintiff alleged, on behalf of the estate of one Dzon, that the decedent had died of lung cancer caused by asbestos fibers and dust inhaled during employment in 1943 and 1944. In June 1979, Keene filed a third-party complaint against the United States, alleging that any asbestos products to which Dzon was exposed had been supplied to the Government in accordance with specifications set out in Government contracts, and seeking indemnification or contribution from the Government for any damages Keene might have to pay the plaintiff. This third-party action ended, however, in May 1980, when the District Court granted Keene's motion for voluntary dismissal of its complaint.

In the meantime, in December 1979, with the *Miller* third-party action still pending, Keene filed the first of its two complaints in issue here, seeking damages from the United States in the Court of Federal Claims "for any amounts which have been, or which may be recovered from Keene by the claimants, by settlement or judgment." *Keene Corp.* v. *United States*, No. 579–79C *(Keene I)*, App. to Pet. for Cert. H15. The "claimants" are defined as the plaintiffs in the more than 2,500 lawsuits filed against Keene "by persons alleging personal injury or death from inhalation of asbestos fibers contained in thermal insulation products" manufactured or sold by Keene or its subsidiaries. *Id.*, at H3. Keene alleges conformance with Government specifications in the inclusion of asbestos within the thermal insulation products Keene supplied to Government shipyards and other projects funded or controlled by the Government, and Keene further claims that the Government even sold it some of the asbestos fiber used in its products. Keene's theory of recovery is breach by the United States of implied warran-

ties in contracts between the Government and Keene, a theory only the Court of Federal Claims may entertain, given the amount of damages requested, under the Tucker Act, 28 U.,S. C. §1491(a)(1).

Keene's next move against the Government came the following month when it filed a 23-count complaint in the District Court for the Southern District of New York. *Keene Corp.* v. *United States,* No. 80–CIV–0401(GLG). The pleadings tracked, almost verbatim, the lengthy factual allegations of *Keene I,* but the action was recast in terms of various tort theories, again seeking damages for any amounts paid by Keene to asbestos claimants. Keene also added a takings claim for the Government's allegedly improper recoupment, under the Federal Employees' Compensation Act (FECA), 5 U. S. C. §8132, of money paid by Keene to claimants covered by the Act. For this, Keene sought restitution of "the amounts of money which have been, or which may be, recouped by [the United States] from claimants from judgments and settlements paid by Keene," App. 37, as well as an injunction against the Government's collection of FECA refunds thereafter. This suit suffered dismissal in September 1981, on the basis of sovereign immunity, which the court held unaffected by any waiver found in the Federal Tort Claims Act, the Suits in Admiralty Act, and the Public Vessels Act. The Court of Appeals affirmed, *Keene Corp.* v. *United States,* 700 F. 2d 836 (CA2 1983), and we denied certiorari, 464 U. S. 864 (1983).

Only five days before the Southern District's dismissal of that omnibus action, Keene returned to the Court of Federal Claims with the second of the complaints in issue here. *Keene Corp.* v. *United States,* No. 585–81C *(Keene II).* Although this one, too, repeats many of the factual allegations of *Keene I,* it adopts one of the theories raised in the Southern District case, seeking payment for "the amounts of money that [the United States] has recouped" under FECA from asbestos claimants paid by Keene. App. to Pet. for

Cert. F10–F11. Again, the recoupments are said to be takings of Keene's property without due process and just compensation, contrary to the Fifth Amendment. See 28 U. S. C. § 1491(a)(1) (covering, *inter alia,* certain claims "founded . . . upon the Constitution").

After the Court of Federal Claims raised the present jurisdictional issue *sua sponte* in similar actions brought by Johns-Manville, the Government invoked 28 U. S. C. § 1500 in moving to dismiss both *Keene I* and *Keene II,* as well as like actions by five other asbestos product manufacturers. With trial imminent in the Johns-Manville cases, the Court of Federal Claims initially granted the motion to dismiss only as to them. *Keene Corp.* v. *United States,* 12 Cl. Ct. 197 (1987). That decision was affirmed on appeal, *Johns-Manville Corp.* v. *United States,* 855 F. 2d 1556 (CA Fed. 1988) *(per curiam),* cert. denied, 489 U. S. 1066 (1989), and the Court of Federal Claims then entered dismissals in *Keene I* and *Keene II,* among other cases, finding that when Keene had filed both *Keene I* and *Keene II,* it had the same claims pending in other courts. 17 Cl. Ct. 146 (1989). While a panel of the Court of Appeals for the Federal Circuit reversed on the ground that § 1500 was inapplicable because no other claim had been pending elsewhere when the Court of Federal Claims entertained and acted upon the Government's motion to dismiss, *UNR Industries, Inc.* v. *United States,* 911 F. 2d 654 (1990), the Court of Appeals, en banc, subsequently vacated the panel opinion, 926 F. 2d 1109 (1990), and affirmed the trial court's dismissals, 962 F. 2d 1013 (1992). We granted certiorari. 506 U. S. 939 (1992).

II

The authority cited for dismissing Keene's complaints for want of jurisdiction was 28 U. S. C. § 1500 (1988 ed., Supp. IV):

"The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which

the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States."[2]

The lineage of this text runs back more than a century to the aftermath of the Civil War, when residents of the Confederacy who had involuntarily parted with property (usually cotton) during the war sued the United States for compensation in the Court of Claims, under the Abandoned Property Collection Act, ch. 120, 12 Stat. 820 (1863). When these cotton claimants had difficulty meeting the statutory condition that they must have given no aid or comfort to participants in the rebellion, see § 3 of the Act, they resorted to separate suits in other courts seeking compensation not from the Government as such but from federal officials, and not under the statutory cause of action but on tort theories such as conversion. See Schwartz, Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents, 55 Geo. L. J. 573, 574–580 (1967). It was these duplicative lawsuits that induced Congress to prohibit anyone from filing or prosecuting in the Court of Claims "any claim . . . for or in respect to which he . . . shall have commenced and has pending" an action in any other court against an officer or agent of the United States. Act of June 25, 1868, ch. 71, § 8, 15 Stat. 77. The statute has long outlived the cotton claimants, having been incorporated

---

[2] When Keene filed its complaints, § 1500 referred to the "Court of Claims" rather than the "United States Court of Federal Claims." See 28 U. S. C. § 1500 (1976 ed.). Section 1500 has since been amended twice, first to substitute "United States Claims Court" for "Court of Claims," Federal Courts Improvement Act of 1982, § 133(e)(1), 96 Stat. 40, and then to substitute "Court of Federal Claims" for "Claims Court," Court of Federal Claims Technical and Procedural Improvements Act of 1992, § 902(a), 106 Stat. 4516. See also n. 1, *supra*.

with minor changes into § 1067 of the Revised Statutes of 1878; then reenacted without further change as § 154 of the Judicial Code of 1911, Act of Mar. 3, 1911, ch. 231, § 154, 36 Stat. 1138, 28 U. S. C. § 260 (1940 ed.); and finally adopted in its present form by the Act of June 25, 1948, ch. 646, 62 Stat. 942, 28 U. S. C. § 1500.

Keene argues it was error for the courts below to apply the statute by focusing on facts as of the time Keene filed its complaints (instead of the time of the trial court's ruling on the motion to dismiss) and to ignore differences said to exist between the Court of Federal Claims actions and those filed in the District Courts. Neither assignment of error will stand.

### A

Congress has the constitutional authority to define the jurisdiction of the lower federal courts, see *Finley* v. *United States*, 490 U. S. 545, 548 (1989), and, once the lines are drawn, "limits upon federal jurisdiction . . . must be neither disregarded nor evaded," *Owen Equipment & Erection Co.* v. *Kroger*, 437 U. S. 365, 374 (1978). In § 1500, Congress has employed its power to provide that the Court of Federal Claims "shall not have jurisdiction" over a claim, "for or in respect to which" the plaintiff "has [a suit or process] pending" in any other court. In applying the jurisdictional bar here by looking to the facts existing when Keene filed each of its complaints, the Court of Federal Claims followed the longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Mollan* v. *Torrance*, 9 Wheat. 537, 539 (1824) (Marshall, C. J.); see *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.*, 484 U. S. 49, 69 (1987) (opinion of SCALIA, J.); *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.*, 303 U. S. 283, 289–290 (1938); *Minneapolis & St. Louis R. Co.* v. *Peoria & P. U. R. Co.*, 270 U. S. 580, 586 (1926).

While acknowledging what it calls this "general rule" that subject-matter jurisdiction turns on the facts upon filing,

Keene would have us dispense with the rule here. Brief for Petitioner 33. Assuming that we could,[3] however, Keene gives us nothing to convince us that we should. Keene argues that if § 1500 spoke of "jurisdiction to render judgment" instead of "jurisdiction" pure and simple, the phrase would "all but preclude" application of the time-of-filing rule. *Id.*, at 34. But, without deciding whether such a change of terms would carry such significance, we have only to say that § 1500 speaks of "jurisdiction," without more, whereas some nearby sections of Title 28 use the longer phrase. This fact only underscores our duty to refrain from reading a phrase into the statute when Congress has left it out. "'[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello* v. *United States*, 464 U. S. 16, 23 (1983) (citation omitted).

Keene's next appeal, to statutory history, is no more availing. The immediate predecessor of § 1500, § 154 of the Judicial Code of 1911, provided that "[n]o person shall file or prosecute in the Court of Claims . . . any claim for or in respect to which he . . . has pending in any other court any suit or process . . . ." Act of Mar. 3, 1911, ch. 231, § 154, 36 Stat. 1138. With this express prohibition against filing claims for which another suit was pending, there could, of course, have been no doubt that at least a time-of-filing rule applied. See *Shapiro* v. *United States*, 168 F. 2d 625, 626 (CA3 1948) (§ 154 "forbids the filing" of a Little Tucker Act

---

[3] On this score, Keene cites *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U. S. 826 (1989), for the proposition that the Court can rely on practical considerations to create exceptions to the time-of-filing rule. Brief for Petitioner 35–36. We need not decide whether Keene's reading is accurate, for Keene has not shown that we should, even if we could. We do note, however, that *Newman-Green* reiterated the principle that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." 490 U. S., at 830.

claim when a related suit is pending); *British American To-bacco Co.* v. *United States*, 89 Ct. Cl. 438, 439 (1939) *(per curiam)* (dismissing a claim under § 154 where, "[a]t the time the petition was filed in this court, the plaintiff . . . had pending in the District Court . . . a suit based upon the same claim"), cert. denied, 310 U. S. 627 (1940); *New Jersey Worsted Mills* v. *United States*, 80 Ct. Cl. 640, 641, 9 F. Supp. 605, 606 (1935) *(per curiam)* ("[W]e think it clear that the plaintiff was not permitted even to file its claim in this court"). Although Keene urges us to see significance in the deletion of the "file or prosecute" language in favor of the current reference to "jurisdiction" in the comprehensive revision of the Judicial Code completed in 1948, we do not presume that the revision worked a change in the underlying substantive law "unless an intent to make such [a] chang[e] is clearly expressed." *Fourco Glass Co.* v. *Transmirra Products Corp.*, 353 U. S. 222, 227 (1957) (footnote omitted); see *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U. S. 826, 831, n. 4 (1989); *Finley* v. *United States, supra*, at 554; *Tidewater Oil Co.* v. *United States*, 409 U. S. 151, 162 (1972). On the point in issue here, there is no such clear expression in the shift from specific language to the general, and the Reviser's Note to § 1500 indicates nothing more than a change "in phraseology," see H. R. Rep. No. 308, 80th Cong., 1st Sess., A140 (1947); cf. *Newman-Green, supra*, at 831. Since Keene, indeed, comes up with nothing to the contrary, we read the statute as continuing to bar jurisdiction over the claim of a plaintiff who, upon filing, has an action pending in any other court "for or in respect to" the same claim.[4]

---

[4] We do not decide whether the statute also continues to bar a plaintiff from prosecuting a claim in the Court of Federal Claims while he has pending a later-filed suit in another court "for or in respect to" the same claim. Cf. *Tecon Engineers, Inc.* v. *United States*, 170 Ct. Cl. 389, 343 F. 2d 943 (1965), cert. denied, 382 U. S. 976 (1966). As the dissenting judge noted below, this case does not raise that issue. *UNR Industries,* ·

B

The statutory notion of comparable claims is more elusive. By precluding jurisdiction over the claim of a plaintiff with a suit pending in another court "for or in respect to" the same claim, § 1500 requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit. The exact nature of the things to be compared is not illuminated, however, by the awkward formulation of § 1500. Nor does it advance the ball very far to recognize from the statute's later reference to "the cause of action alleged in such suit or process," that the term "claim" is used here synonymously with "cause of action," see Black's Law Dictionary 247 (6th ed. 1990) (defining "claim" as "cause of action"), since, as both parties admit, "cause of action," like "claim," can carry a variety of meanings. See Brief for Petitioner 18; Brief for United States 15; see also *Johns-Manville Corp.*, 855 F. 2d, at 1560.

Fortunately, though, we can turn to earlier readings of the word "claim" as it appears in this statute. The phrase "any claim . . . for or in respect to which" has remained unchanged since the statute was first adopted in 1868, see Act of June 25, 1868, ch. 71, § 8, 15 Stat. 77, and prior encounters with § 154 of the Judicial Code of 1911, the immediate predecessor to § 1500, shed some light on the issue. *Corona Coal Co.* v. *United States*, 263 U. S. 537 (1924), was an action brought against the United States in the Court of Claims, seeking compensation for coal requisitioned by the Government. Before bringing its appeal to this Court, the plaintiff sued the President's agent in Federal District Court, "the causes of action therein set forth being the same as that set forth in the [Court of Claims] case." *Id.*, at 539. After noting that the causes of action "arose out of" the same factual setting, we applied § 154 and dismissed the

_____

*Inc.* v. *United States*, 962 F. 2d 1013, 1030, n. 5 (CA Fed. 1992) (Plager, J., dissenting).

appeal. *Id.*, at 539–540. Later that year, we had the case of a plaintiff seeking a writ of mandamus to stop the Court of Claims from reinstating a suit it had dismissed earlier, without prejudice, on the plaintiff's own motion. *Ex parte Skinner & Eddy Corp.*, 265 U. S. 86 (1924). Skinner & Eddy had sued the United States in the Court of Claims for nearly $17.5 million; "[t]he largest item of the claim was for anticipated profits on 25 vessels" covered by an order, later canceled, by the United States Emergency Fleet Corporation. *Id.*, at 91. After the Court of Claims had granted its motion to dismiss, Skinner & Eddy sued the Emergency Fleet Corporation in state court "on substantially the same causes of action as those sued for in the Court of Claims." *Id.*, at 92. There was no question that the factual predicate of each action was the same, except for the omission from the state court action of any demand for anticipated profits, thus limiting the damages sought to $9.1 million. We issued the writ of mandamus, holding that § 154 prevented the Court of Claims from exercising jurisdiction over the claims it had dismissed earlier, given the intervening state court suit.[5]

A few years later, the Court of Claims settled a key question only foreshadowed by *Skinner & Eddy:* whether § 154 applied when the Court of Claims action and the "other" suit proceeded under different legal theories. In *British American Tobacco Co.* v. *United States*, 89 Ct. Cl. 438 (1939) *(per curiam)*, after the plaintiff had surrendered his gold bullion to the Government (in compliance with executive orders and regulations that took this country off the gold

---

[5] We have had one other encounter with this statute, in *Matson Navigation Co.* v. *United States*, 284 U. S. 352 (1932), where we relied on the plain words of § 154 to hold that the statute did not apply where the Court of Claims plaintiff had brought suit in another court against the United States, rather than against an agent of the United States, for the same claim. When Congress reenacted the statute in 1948, it added the phrase "against the United States" to close this loophole. See Act of June 25, 1948, ch. 646, 62 Stat. 942; *Johns-Manville Corp.* v. *United States*, 855 F. 2d 1556, 1566–1567, and n. 15 (CA Fed. 1988).

standard), he sued in the Court of Claims on allegations that he had been underpaid by more than $4.3 million. Earlier the same day, the plaintiff had filed a suit in Federal District Court "for the recovery of the same amount for the same gold bullion surrendered." *Id.,* at 439. The Court of Claims observed that "[t]he only distinction between the two suits instituted in the District Court and in this court is that the action in the District Court was made to sound in tort and the action in this court was alleged on contract." *Id.,* at 440. Because the two actions were based on the same operative facts, the court dismissed the Court of Claims action for lack of jurisdiction, finding it to be "clear that the word 'claim,' as used in section 154, . . . has no reference to the legal theory upon which a claimant seeks to enforce his demand." *Ibid.*

These precedents demonstrate that under the immediate predecessor of § 1500, the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested.[6] See *Skinner & Eddy, supra; Corona Coal, supra.* That the two actions were based on different legal theories did not matter. See *British American Tobacco, supra.* Since Keene has given us no reason to doubt that these cases represented settled law when Congress reenacted the "claim for or in respect to which" language in 1948, see 62 Stat. 942, we apply the presumption that Congress was aware of these earlier judicial interpretations and, in effect, adopted them. *Lorillard* v. *Pons,* 434 U. S. 575, 580 (1978); cf. *United States* v. *Powell,* 379 U. S. 48, 55, n. 13 (1964) (presumption does

---

[6] Because the issue is not presented on the facts of this case, we need not decide whether two actions based on the same operative facts, but seeking completely different relief, would implicate § 1500. Cf. *Casman* v. *United States,* 135 Ct. Cl. 647 (1956); *Boston Five Cents Savings Bank, FSB* v. *United States,* 864 F. 2d 137 (CA Fed. 1988).

not apply when there is no "settled judicial construction" at the time of reenactment). The decision in *British American Tobacco* strikes us, moreover, as a sensible reading of the statute, for it honors Congress's decision to limit Court of Federal Claims jurisdiction not only as to claims "for . . . which" the plaintiff has sued in another court, but as to those "in respect to which" he has sued elsewhere as well. While the latter language does not set the limits of claim identity with any precision, it does make it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation.

Keene nonetheless argues, for the first time in its merits brief,[7] that "[a] claim brought outside the [Court of Federal Claims] is 'for or in respect to' a claim in the [Court of Federal Claims only] when claim-splitting law would treat them as the same—*i. e.*, require them to be joined in a single suit—if the two claims were both brought against the United States." Brief for Petitioner 20. Under this theory, § 1500 would not apply to a Court of Federal Claims plaintiff unless his suit pending in the other court rested on a legal theory that could have been pleaded (as Keene's could not have been) in the Court of Federal Claims. But this reinterpretation of § 1500 is bound to fail, not because novelty is always fatal in the construction of an old statute, but because the novel proposition in Keene's suggested reading would have rendered the statute useless, in all or nearly all instances, to effect the very object it was originally en-

---

[7] Keene argued in its petition for certiorari that the claim it raised in its third-party action in *Miller* was not based on the same facts as its complaint in *Keene I*. Keene did not press this argument after we granted the writ, and, in any event, we see no reason to disturb the rulings to the contrary by both courts below. See 962 F. 2d, at 1024 ("[W]e have no quarrel with the [Court of Federal Claims] determination that the underlying facts in *Miller* and *Keene I* are the same").

acted to accomplish. Keene fails to explain how the original statute would have applied to the cotton claimants, whose tort actions brought in other courts were beyond the jurisdiction of the Court of Claims, just as tort cases are outside the jurisdiction of the Court of Federal Claims today.[8] Keene's theory was squarely rejected in *British American Tobacco*,[9] and it must be rejected again this time.

[8] It is not that Keene has not tried to meet the objection. Keene assumes, contrary to the plain text, that the statute here is not jurisdictional, arguing instead that it was meant to supplement the formalistic 19th-century concept of res judicata. According to Keene, res judicata would not have barred a cotton claimant from instigating an action against a federal officer who had acted for the Government, even though the claimant had lost an otherwise identical action against the Government itself (and vice versa), the difference between the named defendants being significant at that time. On the assumption that the statute eliminated nonidentity of parties defendant as a barrier to the application of res judicata, Keene then argues that causes of action were treated as identical in those days if the same evidence was used to prove multiple claims. On this view of the law, Keene concludes, multiple cotton claims would have been treated as the same, and the statute would have barred the Court of Claims suit, just as Congress intended. Reply Brief for Petitioner 7. Even on its own terms, however, this argument fails, for the Court of Claims in 1868 had no jurisdiction to try a tort action for conversion, however similar it might have been for res judicata purposes to the statutory action within that court's jurisdiction. Accordingly, under Keene's claim-splitting theory, the conversion action would not have been treated as identical with the statutory action; each would have survived, leaving the statute useless to solve the problem Congress was addressing.

[9] Keene claims that its view represents "well-established law," citing *Allied Materials & Equipment Co.* v. *United States*, 210 Ct. Cl. 714 (1976) *(per curiam)*, and *Casman* v. *United States, supra.* Brief for Petitioner 15. In *Casman*, however, the plaintiff was seeking completely different relief in the Court of Claims and the District Court, and later cases have read *Casman* as limited to that situation. See *Johns-Manville Corp.*, 855 F. 2d, at 1566–1567; *Boston Five Cents Savings Bank, FSB* v. *United States*, 864 F. 2d, at 139. Although it is not clear whether the plaintiff in *Allied Materials* was seeking completely different relief in the District Court, the Court of Claims simply applied *Casman* without much explanation. Neither *Casman* nor *Allied Materials* discussed, much less purported to overrule, *British American Tobacco Co.* v. *United States*, 89 Ct. Cl. 438 (1939), a case that undoubtedly is well established. See, *e. g.*,

### III

Finally, Keene takes the tack that if we adopt the Court of Appeals's construction of § 1500, we will be announcing "a new rule of law" that ought to be applied only prospectively under the test set out in *Chevron Oil Co.* v. *Huson*, 404 U. S. 97 (1971). Brief for Petitioner 42–43. Even assuming that this call for "pure prospectivity," see *James B. Beam Distilling Co.* v. *Georgia*, 501 U. S. 529, 544 (1991) (opinion of SOUTER, J.), might fairly fall within the questions presented,[10] there is no need to address it because, as the Government points out, Keene's claims were dismissed under well-settled law.

The Court of Appeals, to be sure, announced that it was overruling five cases: *Tecon Engineers, Inc.* v. *United States*, 170 Ct. Cl. 389, 343 F. 2d 943 (1965), cert. denied, 382 U. S. 976 (1966); *Casman* v. *United States*, 135 Ct. Cl. 647 (1956); *Boston Five Cents Savings Bank, FSB* v. *United States*, 864 F. 2d 137 (CA Fed. 1988); *Brown* v. *United States*, 175 Ct. Cl. 343, 358 F. 2d 1002 (1966) *(per curiam)*; and *Hossein* v. *United States*, 218 Ct. Cl. 727 (1978) *(per curiam)*. And while Keene contends that nothing less than these repudiations of precedent would have sufficed to dismiss its suits, we read the five cases as supporting neither Keene's position that the Court of Federal Claims had jurisdiction over its cases nor its plea for pure prospectivity of the overruling decision.

---

*Johns-Manville Corp., supra*, at 1562–1563; *Los Angeles Shipbuilding & Drydock Corp.* v. *United States*, 138 Ct. Cl. 648, 652, 152 F. Supp. 236, 238 (1957); *Hill* v. *United States*, 8 Cl. Ct. 382, 386–388 (1985). Accordingly, Keene's appeal to "well-established law" is misplaced.

[10] The questions on which we granted certiorari contain no direct mention of prospectivity, see Pet. for Cert. i, although Keene did argue in its petition that *Tecon Engineers* should be overruled only prospectively, see Pet. for Cert. 13, and the Court of Appeals did consider, and reject, the argument that its ruling should only be prospectively applied, see 962 F. 2d, at 1025.

In applying § 1500 to the facts of this case, we find it unnecessary to consider, much less repudiate, the "judicially created exceptions" to § 1500 found in *Tecon Engineers, Casman,* and *Boston Five.* See 962 F. 2d, at 1021. *Tecon Engineers* held that a later filed action in another court does not oust the Court of Federal Claims of jurisdiction over an earlier filed complaint; our decision turns on Keene's earlier filed District Court actions, and even Keene now concedes it to be "unnecessary for the Court to address the *Tecon* question" in ruling on the dismissal of Keene's claims. Reply Brief for Petitioner 14, n. 14; see n. 4, *supra.* The *Casman* court recognized an exception (followed in *Boston Five*) for plaintiffs who seek distinctly different types of relief in the two courts; here, Keene had sought monetary relief in each of the cases pending when it filed the complaints seeking monetary relief in *Keene I* and *Keene II.* See n. 6, *supra.* In *Brown,* the Court of Claims reinstated a claim after the plaintiff's District Court action for the same claim had been dismissed, on the grounds that the other suit was "no longer 'pending'" and had itself been dismissed because jurisdiction lay exclusively in the Court of Claims. 175 Ct. Cl., at 348, 358 F. 2d, at 1004. *Brown's* narrow reasoning, that § 1500 does not apply after dismissal of an earlier filed District Court suit brought in derogation of the Court of Federal Claims's exclusive jurisdiction, was echoed in *Hossein,* a *per curiam* order citing neither *Brown,* nor any other case, on this point.[11] See also *Boston Five, supra,* at 139–140 (following *Hossein*). Since Keene's District Court actions were not, and could not have been, dis-

---

[11] We note that both the *Brown* and *Hossein* courts failed to consider the possibility that the District Court, in such a situation, could transfer the case to the Court of Federal Claims under a statute first adopted in 1960. See Act of Sept. 13, 1960, § 1, 74 Stat. 912 (codified at 28 U. S. C. § 1406(c) (1964 ed.)); Act of Apr. 2, 1982, § 301(a), 96 Stat. 55 (codified at 28 U. S. C. § 1631).

missed on the ground of falling within the exclusive jurisdiction of the Court of Federal Claims, Keene gets no support from *Brown* and *Hossein.*[12]  Thus, there is no "new principle of law" at work in ruling against Keene, see *Chevron Oil, supra,* at 106, and no need to plunge into retroactivity analysis.[13]

## IV

We have said nothing until now about Keene's several policy arguments, and now can only answer that Keene addresses the wrong forum.  It may well be, as Keene argues, that § 1500 operates in some circumstances to deprive plaintiffs of an opportunity to assert rights that Congress has generally made available to them "under the complex legal and jurisdictional schemes that govern claims against the Government."  Brief for Petitioner 15.  The trial judge in this case was not the first to call this statute anachronistic, see 12 Cl. Ct., at 205; *A. C. Seeman, Inc.* v. *United States,* 5 Cl. Ct. 386, 389 (1984), and there is a good argument that, even when first enacted, the statute did not actually perform the preclusion function emphasized by its sponsor, see Schwartz, 55 Geo. L. J., at 579.  But the "proper theater" for such arguments, as we told another disappointed claimant many years ago, "is the halls of Congress, for that branch of the government has limited the jurisdiction of the Court of Claims."[14]  *Smoot's Case,* 15 Wall. 36, 45 (1873). We enjoy no "liberty to add an exception . . . to remove

---

[12] *Brown* and *Hossein* do not survive our ruling today, for they ignored the time-of-filing rule discussed in Part II–A, *supra.*

[13] Keene also asks the Court to "make clear that, if Keene refiles the same claims, equitable tolling would be available to eliminate any limitations bar."  Brief for Petitioner 45.  But any response to this request would be an advisory opinion.

[14] A recent attempt to repeal § 1500 failed in Congress.  See S. 2521, 102d Cong., 2d Sess., § 10(c) (1992); 138 Cong. Rec. S4830–S4832 (Apr. 2, 1992).

apparent hardship," *Corona Coal,* 263 U. S., at 540, and therefore enforce the statute.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE STEVENS, dissenting.

In my opinion, 28 U. S. C. § 1500 does not require the Court of Federal Claims to dismiss an action against the United States simply because another suit on the same claim was once, but is no longer, pending in district court. Rather, the plaintiff may continue to pursue his claim so long as there is no other suit pending when the Court of Federal Claims decides the motion to dismiss. Neither the text nor the history of the statute demands more of the plaintiff than that he make an "election either to leave the Court of Claims or to leave the other courts" at that time.[1]

Section 1500 is not itself a grant of jurisdiction to the Court of Federal Claims. That function is performed by other sections of the Judicial Code immediately preceding § 1500, which give the court "jurisdiction *to render judgment* upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regu-

---

[1] Senator Edmunds explained the purpose of the provision that is now § 1500, as follows:

"'The object of this amendment is to put to their election that large class of persons having cotton claims particularly, who have sued the Secretary of the Treasury and the other agents of the Government in more than a hundred suits that are now pending, scattered over the country here and there, and who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims. The object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts. I am sure everybody will agree to that.'" *UNR Industries, Inc. v. United States,* 962 F. 2d 1013, 1018 (CA Fed. 1992) (quoting 81 Cong. Globe, 40th Cong., 2d Sess., 2769 (1868).

lation of an executive department, or upon any express or implied contract with the United States," 28 U. S. C. § 1491(a)(1), and "jurisdiction *to render judgment* upon any claim by a disbursing officer of the United States . . . ," 28 U. S. C. § 1496 (emphases added). See also §§ 1497 and 1499 (granting jurisdiction to "render judgment" over other claims).[2] Section 1500, by contrast, "takes away jurisdiction even though the subject matter of the suit may appropriately be before the Claims Court." *UNR Industries, Inc.* v. *United States,* 962 F. 2d 1013, 1028 (CA Fed. 1992) (Plager, J., dissenting) (emphasis deleted). It is only reasonable to assume that the "jurisdiction" § 1500 takes away is the same as the "jurisdiction" surrounding Code provisions bestow: the jurisdiction to enter judgment.

The text of § 1500 simply provides that the Court of Federal Claims " 'shall not have jurisdiction' over a claim '. . . which' the plaintiff . . . *'has pending'* in any other court . . . ." *Ante,* at 207 (emphasis added). Accordingly, so long as a plaintiff has pending another suit in another court, the Court of Federal Claims may not adjudicate the plaintiff's claim, even though its subject matter would otherwise bring it within the court's jurisdiction. The Government may invoke this exception by putting such a plaintiff to his choice: either "leave the other courts," n. 1, *supra,* or forgo further proceedings in the Court of Federal Claims. If the plaintiff declines to leave the other courts, then the Court of Federal Claims is without jurisdiction to proceed with the case before it, though it may retain the case on its docket pending disposition of the other action. *Hossein* v. *United States,* 218 Ct. Cl. 727 (1978). But if the plaintiff does dismiss his other action, then the Court of Federal Claims is free to decide his case. Section 1500 was so construed over a quarter

---

[2] Sections immediately following § 1500 use similar language with respect to other types of claims. See 28 U. S. C. §§ 1503, 1508.

of a century ago, see *Brown* v. *United States*, 175 Ct. Cl. 343, 358 F. 2d 1002 (1966),[3] and I see no reason to interpret it now as a broader prohibition on pretrial proceedings.

It is true that an earlier version of § 1500 provided that a claimant may not "file or prosecute" an action in the Court of Federal Claims while another action is pending. *Ante,* at 208. That original text, however, did not prescribe the consequences of a prohibited filing. In view of the fact that the text did not then mention the word "jurisdiction," there is nothing to suggest that pendency of another action would have to be treated as a defect warranting automatic dismissal.[4] Instead, given the plain statement of the legislation's sponsor that he intended to force an election of remedies before trial, see n. 1, *supra,* this earlier language is fairly construed as giving the Government the right to avoid duplicative litigation by having the Court of Claims action

---

[3] "At the present time, therefore, the only claim for just compensation pending in a court is that stated in the plaintiffs' petition in this court.

"In these circumstances we grant the motions for rehearing, vacate our prior order dismissing the petition, and now deny the defendant's motion to dismiss. Our earlier order of dismissal was predicated on the fact that the other 'claim remains pending in the said District Court.' That is no longer true, and the claim is no longer 'pending in any other court.' In this situation, we do not believe that 28 U. S. C. § 1500 requires us to deprive plaintiffs of the only forum they have in which to test their demand for just compensation." *Brown,* 175 Ct. Cl., at 348, 358 F. 2d, at 1004.

See also *Boston Five Cents Savings Bank, FSB* v. *United States,* 864 F. 2d 137, 139 (CA Fed. 1988) (staying Court of Federal Claims action while District Court action pending); *Prillman* v. *United States,* 220 Ct. Cl. 677, 679 (1979) (same).

[4] As Justice Holmes pointed out, in a similar context, "no one would say that the words of the Mississippi statute of frauds, 'An action shall not be brought whereby to charge a defendant,' go to the jurisdiction of the court. Of course it could be argued that logically they had that scope, but common sense would revolt." *Fauntleroy* v. *Lum,* 210 U. S. 230, 235 (1908) (internal citation omitted).

dismissed if the plaintiff chose not to abandon the claim pending elsewhere.

In any event, when the text of § 1500 was revised in 1948, Congress removed the prohibition on filing. The Court nevertheless assumes that the section should be construed as originally drafted, because Congress did not intend the 1948 revisions of the Judicial Code to make substantive changes in the law. See *ante*, at 209. In fact, the 1948 revision did work a significant substantive change by enlarging the class of suits subject to dismissal to include suits against the United States, as well as suits against its agents. See *ante*, at 212, n. 6; *Matson Navigation Co.* v. *United States*, 284 U. S. 352, 355–356 (1932); see also Schwartz, Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents, 55 Geo. L. J. 573, 579–580 (1967). But even if it were the case that Congress intended no substantive change in 1948, that would mean only that the present text is the best evidence of what the law has always meant, and that the language of the prior version cannot be relied upon to support a different reading.

In my judgment, the Court of Claims properly construed § 1500 in 1966 when it held that the provision merely requires claimants to choose between alternative pending claims before proceeding to trial. See *Brown*, 175 Ct. Cl., at 348, 358 F. 2d, at 1004. The statute limits the power of the Court of Federal Claims to render judgments, and thus the ability of a plaintiff to prosecute simultaneous actions against the Government, but it does not prevent the Court of Federal Claims from allowing a case to remain on its docket until the claimant has made the required election. Even if I did not agree with this interpretation of § 1500, however, I would nevertheless endorse it here, as litigants have a right to rely on a longstanding and reasoned judicial construction of an important statute that Congress has not seen fit to alter. See *McNally* v. *United States*, 483 U. S.

350, 376–377 (1987) (STEVENS, J., dissenting) (citing cases). Whether or not "novelty is always fatal in the construction of an old statute," *ante*, at 213, the overruling of a consistent line of precedent raises equitable concerns that should not be disregarded.[5]

Admittedly, this is a badly drafted statute. Viewed against a legal landscape that has changed dramatically since the days of the cotton claimants, see *ante*, at 206–207, it does not lend itself easily to sensible construction. Moreover, the Court's interpretation of § 1500 today may have the salutary effect of hastening its repeal or amendment. Nevertheless, a reading that is faithful not only to the statutory text but also to the statute's stated purpose is surely preferable to the harsh result the Court endorses here. Accordingly, I respectfully dissent.

---

[5] The Court seeks to minimize these concerns by suggesting that the *Brown* line of cases on which petitioner relies would not in any event apply here, because petitioner's District Court action was not dismissed on the grounds that it fell within the exclusive jurisdiction of the Court of Federal Claims. *Ante*, at 216–217. In my view, *Brown*, and cases like it, do not warrant such a narrow reading, but stand instead for the broader proposition that a former district court action, once dismissed, no longer bars adjudication in the Court of Federal Claims. See n. 2, *supra; National Steel & Shipbuilding Co.* v. *United States*, 8 Cl. Ct. 274, 275–276 (1985) (in case of concurrent jurisdiction, providing for automatic reinstatement of Court of Federal Claims action upon dismissal of district court suit). That the Court of Appeals felt it necessary to overrule *Brown* on the facts of this case, see *UNR Industries*, 962 F. 2d, at 1022, suggests a similar understanding of *Brown*'s scope.