Bill E. DAVIS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–318L.

United States Court of Federal Claims.

Dec. 17, 1993.

Bill E. Davis, pro se.

Marc A. Smith, with whom was Acting Asst. Atty. Gen. Lois J. Schiffer, Washington, DC, for defendant. Theresa Mobley, Nick Turner, and Linda Stamp, F.D.I.C., of counsel.

## OPINION

ANDEWELT, Judge.

In this action, plaintiff, Bill E. Davis, an attorney appearing *pro se*, seeks compensation from the United States for the Federal Deposit Insurance Corporation's (FDIC) foreclosure on and sale of certain property plaintiff had used as security in obtaining a bank loan. At the time he filed the instant action, plaintiff had suits pending in state court and federal district court in which he contested the same actions of the FDIC and its appointees and sought overlapping monetary damages. The instant action is presently before the court on defendant's motion to dismiss the complaint pursuant to 28 U.S.C. § 1500 for lack of subject matter jurisdiction. Defendant contends that because plaintiff had pending these two other suits at the time he filed the instant action, Section 1500 precludes this court from exercising jurisdiction over the instant complaint. For the reasons set forth below, defendant's motion to dismiss is granted.

### I.

According to the instant complaint, in 1983, plaintiff executed and delivered a "Non–Recourse Real Estate Lien Note" (the note) to PetroBank N.A. of Houston, Texas. As security for the note, plaintiff executed a "Deed of Trust" to Lawrence D. Hearn, II, trustee for PetroBank, in which plaintiff conveyed a security interest in certain property known as the Allen's Landing Property. On June 12, 1986, the Office of the Comptroller of the Currency declared PetroBank insolvent and, pursuant to 12 U.S.C. § 1821(d), appointed the FDIC as receiver. Acting in its statutory capacity as receiver, the FDIC sold plaintiff's note, along with other assets of PetroBank, to the FDIC acting in its capacity as insurer of federally insured bank deposits. 12 U.S.C. § 1823(c)(1), (c)(2)(A)(i), and (d)(1). *See also FDIC v. Ashley*, 585 F.2d 157 (6th Cir.1978) (the FDIC may act in two distinct capacities—as receiver and as corporate insurer). On April 27, 1988, Ellen M. Lang, who the FDIC had appointed successor trustee, notified plaintiff that because plaintiff had defaulted on his note, the FDIC would hold a foreclosure sale of the Allen's

Landing Property. Plaintiff objected in writing to the FDIC's proposed action, but the foreclosure sale proceeded and the FDIC purchased the Allen's Landing Property for $133,350. The FDIC later resold the property to a third party.

Plaintiff alleges that the FDIC's actions with respect to the sale and purchase of plaintiff's note and the foreclosure sale of the Allen's Landing Property were irregular and unlawful in numerous ways and that the FDIC's $133,350 payment for the Allen's Landing Property constituted only a fraction of the property's fair market value. Specifically, the complaint alleges, *inter alia*, that (1) the FDIC and Lang breached the provisions of plaintiff's contract with PetroBank and otherwise wrongfully foreclosed on and sold the Allen's Landing Property, (2) the FDIC's actions constituted a taking of private property by the United States without just compensation in violation of the Fifth Amendment to the Constitution, and (3) the FDIC conspired along with Lang and the United States to violate plaintiff's First and Fifth Amendment rights. While the complaint refers to the United States as a separate conspirator, the complaint lists specific actions of only the FDIC and Lang. The complaint alleges that the United States is liable for the FDIC's actions because the FDIC is an agency of the United States.

## II.

Plaintiff mailed the instant complaint to the United States Claims Court (now the United States Court of Federal Claims) on April 30, 1992. The complaint arrived at the court on May 1, 1992, and, pursuant to court rules, was filed on that day. On April 30, 1992, after placing the instant complaint in the mail, plaintiff drove to Houston and filed two other complaints, one in state court and one in federal district court, contesting the same actions of the FDIC and Lang. The state court action names Lang as the defendant. The heading on the first page of the district court complaint lists only the FDIC as a defendant, but in paragraph 5 the complaint states: "The United States is a bona fide party defendant in this action (in the alternative) for reason that the FDIC acted in its capacity as a governmental regulatory agency of the United States which insures bank deposits and has caused damages to the Plaintiff." Because the state and district court actions were filed on April 30, 1992, and the instant complaint was filed on May 1, 1992, the state and district court actions were pending when plaintiff filed the instant action.

Plaintiff's explanation for filing three distinct actions seeking essentially the same relief is fairly straightforward. Plaintiff was concerned that if he brought suit against fewer than all three entities, those that were sued would simply place the blame for any improper foreclosure and sale on those that were not sued, and plaintiff could be denied adequate relief. To assure jurisdiction over all three defendants, plaintiff decided to file three distinct actions.

## III.

At first blush, plaintiff's approach would seem to be a rational attempt to "cover all bases" and thereby assure that the courts would address the merits of plaintiff's claim of governmental wrongdoing. But by filing the instant action at a time when his district court action was already pending,[1] plaintiff appears to have run afoul of Section 1500. Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

In *Keene Corp. v. United States*, ⸺ U.S. ⸺, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993),

---

1. Defendant contends that the pendency of plaintiff's state court action against Lang in itself warrants dismissal of the instant claim under Section 1500. But because this court concludes that plaintiff's district court action alone requires dismissal of the instant complaint, the court will not address the issue of whether plaintiff's state court action also would require dismissal.

the Supreme Court discussed at length the precedent interpreting Section 1500. The Court concluded that at least where there is some overlap in the relief sought in the two separate actions and the identities of the respective defendants in the two actions bring the actions within the scope of Section 1500, the jurisdictional bar in Section 1500 would apply wherever the claims in the two actions are based on essentially the same operative facts. *Id.,* —— U.S. at ——, 113 S.Ct. at 2043. Herein, plaintiff's district court action was pending at the time plaintiff filed the instant action and the two suits are based on identical facts and legal theories and seek the same monetary relief. (Indeed, for the most part, the complaints are verbatim copies of each other, with the differences primarily involving the identification of the particular defendants.) Therefore, the Section 1500 jurisdictional bar applies so long as the identities of the respective defendants bring the two suits within the scope of Section 1500.

As to the identity of the defendants, the Section 1500 jurisdictional bar applies, *inter alia,* where the United States is the defendant in both suits. In the instant action, the United States is the only defendant. As to the district court action, because paragraph 5 of the complaint refers to "[t]he United States [as] a bona fide party defendant," it would seem reasonable to characterize the United States as a defendant in that action. Indeed, the district court apparently so considered the United States because on September 3, 1992, subsequent to the filing of the instant complaint, the district court granted the United States' motion to dismiss itself as a defendant in that action.[2]

Moreover, even if plaintiff's district court complaint were interpreted as not naming the United States as a defendant, the naming of the FDIC as a defendant would itself be sufficient for the Section 1500 jurisdictional bar to apply. Section 1500 applies where the suit "pending in any other court" is brought against a person "acting or professing to act, directly or indirectly under the authority of the United States." In both his district court complaint and the instant complaint, plaintiff recognizes that the FDIC is an agency of the United States. *See, e.g., Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.1982), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) ("The [FDIC] is a federal agency...."); *FDIC v. Glickman,* 450 F.2d 416, 418 (9th Cir.1971); *Freeling v. FDIC,* 221 F.Supp. 955, 956 (W.D.Okla.1962), *aff'd,* 326 F.2d 971 (10th Cir.1963) ("It seems beyond argument that the statute 12 U.S.C.A. § 1811 et seq. ... plainly establishes the [FDIC] as a federal agency.") Plaintiff does not contend in either complaint that when engaging in the disputed actions, the FDIC was acting or professing to act in any other capacity than its capacity as an agency of the United States, *i.e.,* plaintiff does not contend that the FDIC was not acting "under the authority of the United States."[3]

In any event, the FDIC's foreclosure on and sale of the Allen's Landing Property were within the scope of the FDIC's statutory authority as an agency of the United States. The FDIC's statutory mission is to

---

**2.** Plaintiff alleges that he never served his district court complaint on the United States. But service is not a prerequisite for a case to be "pending" against a particular defendant in district court. An action commences in district court with the filing of a complaint. Fed.R.Civ.P. 3. *See West v. Conrail,* 481 U.S. 35, 39, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). A plaintiff has 120 days after filing its complaint to serve the defendants, or the action is subject to dismissal. Fed. R.Civ.P. 4(j). The district court ultimately dismissed the United States as a defendant, but not until after plaintiff filed the instant complaint. For purposes of applying Section 1500, this court's jurisdiction over the instant action is properly evaluated at the time the instant complaint was filed. *Keene,* —— U.S. at ——, 113 S.Ct. at 2040.

**3.** Plaintiff notes correctly that the FDIC is not the United States *per se* and that the Attorney General has never issued a formal certification to the effect that when the FDIC engaged in the disputed actions, it was "acting or professing to act, directly or indirectly under the authority of the United States." But certification is a prerequisite for suits against the United States in tort actions brought under the Federal Tort Claims Act. 28 U.S.C. § 2679. There is no certification requirement in 28 U.S.C. § 1331 under which plaintiff brought his district court action, or under the Tucker Act, 28 U.S.C. § 1491, which is the jurisdictional basis for the instant action and an alleged additional jurisdictional basis for the district court action.

insure bank deposits and thereby stabilize the national banking system. 12 U.S.C. § 1811. To accomplish this mission, the FDIC has the statutory authority to purchase assets of a failed institution from a receiver so as to facilitate the institution's merger with a viable institution. 12 U.S.C. § 1823(c)(2)(A). The FDIC is authorized to purchase such assets even when the FDIC itself is the receiver. 12 U.S.C. § 1823(d)(1). When the FDIC purchases the assets, it acquires "all of the rights, powers, privileges, and authorities of the [FDIC] as receiver," 12 U.S.C. § 1823(d)(3)(A), and thereby, like the FDIC as receiver, succeeds to "all rights, titles, powers, and privileges of the insured depository institution ... with respect to ... the assets of that institution," 12 U.S.C. § 1821(d)(2)(A)(i). Consistent with this statutory authority, the FDIC, when acting as corporate insurer, is permitted to "enforce and liquidate these assets" to minimize loss to the insurance fund. *FDIC v. Clark*, 978 F.2d 1541, 1545 (10th Cir.1992). The FDIC's authority as an agency of the United States, therefore, includes the authority to foreclose on and sell collateral where one of its purchased assets is in default.[4]

In view of the above, the requirements for application of the Section 1500 jurisdictional bar have been satisfied. Plaintiff's district court action was pending at the time plaintiff filed the instant action, the two cases involve essentially the same operative facts and seek the same monetary relief, and the identity of the defendants in the two actions bring the actions within the scope of Section 1500. The court notes, however, that even if it were somehow true that the FDIC had not been "acting or professing to act, directly or indirectly under the authority of the United States," the court nevertheless would still seem required to dismiss the instant action. The only actions of the United States that plaintiff contests in the instant complaint are the actions of the FDIC and its appointee, Lang. Therefore, unless the FDIC was somehow acting under the authority of the United States, there would seem to be no

legal link between the United States and the conduct challenged in the complaint and, hence, the instant complaint would not state a cause of action against the United States upon which this court could grant relief. RCFC 12(b)(4).

## IV.

Plaintiff argues that interpreting Section 1500 to bar the instant action would produce an unconstitutional result because it would deprive plaintiff of his substantive and procedural due process rights and of his right to access to the judiciary for redress of his injuries. But this argument misunderstands the nature of Section 1500. Section 1500 does not preclude plaintiff from pursuing a cause of action based on the FDIC's allegedly improper foreclosure on and sale of the Allen's Landing Property. Plaintiff may bring such an action. What plaintiff may not do is first bring an action in the district court against the FDIC, a federal agency, and then, while that claim is still pending, bring a claim in this court against the United States based on the same operative facts and seeking overlapping monetary relief. Section 1500, therefore, does not preclude plaintiff from seeking redress for his alleged damages through the courts, but rather it merely requires plaintiff to consider the operative facts, study the applicable law, and choose the forum in which to pursue his claim based on those facts. In precedent binding on this court, the Court of Appeals for the Federal Circuit found no legal flaw in such a requirement, and stated: "[W]e see no harm in requiring a party to carefully assess his claims before filing and choose the forum best suited to the merits of the claims and the applicable statute of limitations." *UNR Industries, Inc. v. United States*, 962 F.2d 1013, 1021 (Fed.Cir.1992), *cert. granted sub nom. Keene Corp. v. United States*, —— U.S. ——, 113 S.Ct. 373, 121 L.Ed.2d 285 (1992).

A determination that Section 1500 passes constitutional muster, however, does not mean that Section 1500 has not significantly

---

4. Herein, under the terms of plaintiff's "Deed of Trust," PetroBank was authorized to purchase the Allen's Landing Property at a foreclosure sale held by PetroBank. Thus, the FDIC assumed this right of PetroBank both to foreclose on and purchase the property when the FDIC succeeded to the rights of PetroBank pursuant to 12 U.S.C. §§ 821(d)(2)(A)(i) and 1823(d)(3)(A).

disadvantaged plaintiffs seeking redress for governmental wrongdoing. Section 1500 was enacted with the salutary intent of shielding the United States from the burden of defending the same claim in two different fora. *Id.* at 1018. As applied, however, Section 1500 has operated to preclude certain plaintiffs from presenting what otherwise would be viable claims of governmental wrongdoing in courts of competent jurisdiction. By so doing, Section 1500 has created a minefield for the unwary and, even for those represented by highly skilled counsel, a significant hurdle in securing compensation for illegal governmental conduct.

The problems that Section 1500 poses for plaintiffs can be appreciated from an analysis of *Johns–Manville Corp. v. United States,* 855 F.2d 1556 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Therein, Johns–Manville and other asbestos sellers (hereinafter Johns–Manville) brought suit in this court seeking to recover from the United States the damages that had been assessed against them in suits brought by shipyard workers who had been exposed to asbestos sold by Johns–Manville to the United States. Johns–Manville had two distinct theories as to why the United States was liable for the injuries to the workers, one theory sounding in tort and the other in contract. Both theories relied on the same operative facts, *id.* at 1563, but because of the intricacies of federal court jurisdiction, Johns–Manville could not present both theories in the same court. The district court had jurisdiction over the tort claim and the Court of Federal Claims had jurisdiction over the contract claim. Johns–Manville filed its tort claim in district court first and then shortly before the statute of limitations expired in this court, filed its contract claim here. The Court of Appeals for the Federal Circuit concluded, however, that the filing of the Court of Federal Claims action while the district court tort action was pending was inconsistent with Section 1500, and the court ordered the dismissal of the contract claim.

Thus, the *Johns–Manville* decision precluded Johns–Manville, and precludes similarly situated plaintiffs, from pursuing different theories of liability based upon the same operative facts in the Court of Federal Claims and another court at the same time. Such a result may not be particularly significant if a plaintiff were able to complete its district court litigation on a tort theory in time to file a timely complaint in the Court of Federal Claims on a contract theory, *i.e.,* if the statute of limitations for the Court of Federal Claims action had not yet expired when the district court action was completed and hence no longer pending. But the result is highly significant where, as in *Johns–Manville,* the first litigation cannot be completed before the statute of limitations runs on the potential Court of Federal Claims action. In such a case, Section 1500, in effect, can bar a plaintiff, as it barred Johns–Manville, from ever presenting his or her contract theory in this court, regardless of the claim's legal merits.

This court recognizes that Johns–Manville had the option of pursuing only its contract claim or only its tort claim without raising any possible issue under Section 1500. Or Johns–Manville could have pursued its tort claim initially and then dismissed that claim and filed a contract claim when it was apparent that the tort claim would not be resolved before the statute of limitations on the contract claim expired. But it is often difficult to predict the outcome of litigation, including which legal theory in the end will prevail. Therefore, a statute that forces a plaintiff in a suit against the United States to elect between possible legal theories potentially can force a plaintiff to abandon its only winning theory and thereby prevent a plaintiff from securing compensation for damages suffered from illegal conduct by the government.

By its terms, Section 1500 requires plaintiff herein to make a similar election to that required of Johns–Manville. Plaintiff could not, consistent with Section 1500, bring a Court of Federal Claims suit against the United States while his district court action against the FDIC was pending on the same operative facts and covering the same damages. Plaintiff was obliged to elect to pursue one suit or the other.

### V.

The courts have long recognized Section 1500's potential adverse impact on a plaintiff who seeks redress for governmental wrongdoing. *UNR*, 962 F.2d at 1022 (quoting *Brown v. United States*, 175 Ct.Cl. 343, 348, 358 F.2d 1002, 1004 (1966)) ("It may ... seem[ ] unfair 'to deprive plaintiffs of the only forum they [had] in which to test their demand.' "); *Johns–Manville*, 855 F.2d at 1565; *Benally v. United States*, 14 Cl.Ct. 8, 10 (1987). In *Keene*, —— U.S. at ——, 113 S.Ct. at 2045, the Supreme Court acknowledged that Section 1500 "operates in some circumstances to deprive plaintiffs of an opportunity to assert rights that Congress has generally made available to them."

Experience from private litigation in which the government is not a party suggests that a sanction as severe as dismissal of a plaintiff's Court of Federal Claims action may not be necessary to protect adequately the legitimate interests of the government. Because Section 1500 does not reach the situation where a private plaintiff brings multiple suits in different fora on the same operative facts against a single private defendant, the courts have had to address such suits without the "benefit" of the jurisdictional bar in Section 1500. In response, the courts have developed a variety of tools and procedures designed to preserve the limited resources of both the courts and the private parties and to prevent a defendant from having to defend similar actions in two courts at the same time. For example, relying on notions of judicial comity, the court hearing a case filed second in time often will suspend the action until the first-filed suit is resolved. *See, e.g., Landis v. North American Co.*, 299 U.S. 248, 253, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936) (a federal court has the power to stay proceedings pending the outcome of a similar case in another district); *Small v. Wageman*, 291 F.2d 734, 735 (1st Cir.1961); 1A James W. Moore, et al., *Moore's Federal Practice* ¶ 0.203[4] (2nd ed. 1993). After resolution of the first suit, the court with jurisdiction over the second-filed suit then will proceed to resolve any issues that remain open in the second-filed litigation. In view of the potential applicability of the doctrines of collateral estoppel and res judicata, the decision in the first litigation often diminishes the number of issues that otherwise would have to be addressed in the second litigation.

Tools and procedures such as these appear to have worked reasonably well in minimizing the cost of litigation in suits between private litigants, and, unlike Section 1500, have not deprived plaintiffs of an opportunity to test each of their proposed theories of liability in court. It is not apparent that in the absence of Section 1500, the courts could not use similar procedures to protect adequately the interests of the United States. Therefore, it is at least arguable that from a legal policy perspective, the benefits to the United States that derive from Section 1500 do not outweigh Section 1500's costs to private litigants in terms of forcing them to abandon potentially viable legal theories of governmental wrongdoing.

But such consideration of legal policy and the balancing of such benefits and costs is beyond the authority of this court. Section 1500 is jurisdictional in nature and the definition of this court's jurisdiction is within the exclusive domain of Congress. "A court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." *Johns–Manville*, 855 F.2d at 1565 (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988)). Thus, this court must apply Section 1500 in a manner consistent with controlling precedent. If Section 1500 operates to produce inequitable results, it is a problem that only Congress can address. To date, Congress has not chosen to modify Section 1500 and therefore the instant action must be dismissed.

### Conclusion

For the reasons set forth above, defendant's motion to dismiss is granted. The Clerk of the Court is directed to dismiss plaintiff's complaint. No costs.

IT IS SO ORDERED.