LAN–DALE COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 03–1956C.

United States Court of Federal Claims.

Filed: Feb. 13, 2004.

Reissued for publication: April 6, 2004.

James M. Sakrison, Tucson, Arizona, attorney of record for plaintiff.

Carolyn J. Craig, Washington, D. C., with whom was Peter D. Keisler, Assistant Attorney General, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

On Friday, January 9, 2004,[1] defendant filed a motion to dismiss, or in the alternative, motion to strike portions of plaintiff's first amended complaint filed on December 19, 2003. Defendant's motion to dismiss asserted that this court lacked jurisdiction to hear this claim based on 28 U.S.C. § 1500, infra. In addition to its citation of 28 U.S.C. § 1500 as grounds for dismissal, defendant argues that plaintiff's first amended complaint should also be dismissed for failure to state a claim upon which relief may be granted, per RCFC 12(b)(6). Alternative to dis-

---

1. On January 21, 2004, the defendant filed a corrected copy of this motion.

missal on the two foregoing grounds, defendant seeks to strike portions of the first amended complaint. For the foregoing reasons, defendant's motion to dismiss per 28 U.S.C. § 1500 is granted, thus the alternative ground for dismissal and the motion to strike are not reached inasmuch as said issues are now moot.

## I. Background

The underlying action arises from a settlement agreement to a contract entered into by the parties on January 18, 2000. (1st Am. Compl.App.W.) This settlement agreement operated to fully release the government from all claims relating to contract M00264–92–C–0010, which was an award/contract for the exchange and flight delivery of aircraft and related equipment owned by plaintiff and/or the Marine Corps Air Ground Museum (MCAGM) entered into in 1992. The 1992 contract was an agreement in two parts. The first part called for, in essence, the transfer of title of one of the Museum's planes (a CD–117D) to Lan–Dale[2] in exchange for a VC–118B plane that Lan–Dale owned. This transfer was done because the Museum needed the plane flight-delivered from Quantico, VA to Cherry Point, NC, and Museum regulations forbid Museum-owned aircraft to be flown. By transferring the title of the CD–117D to Lan–Dale, this restriction lifts and Lan–Dale can accomplish lawfully what the Museum alone cannot. The record shows that this portion of the two-part agreement was carried out without a problem.

The second part of the 1992 agreement required Lan–Dale to, upon flight-delivery to Cherry Point, NC, transfer title of the CD–117D to the Museum in exchange for trade stock. The Museum did not have sufficient trade stock to compensate Lan–Dale at the time of contracting, so instead, Lan–Dale was allegedly assured that they had priority over all others with respect to newly-acquired trade stock, and the return exchange portion of the contract would be ongoing "until such

time as a mutually agreed upon exchange is consummated." (Compl.App. C.) Without belaboring all of the nuances of the parties' entanglements throughout the performance of the second part of 1992 contract, it is fair to say that numerous issues arose. For example, Lan–Dale was, allegedly, not given priority over all other contractors. Additionally, Lan–Dale alleged that the valuation of the original exchange, which determined the value of the trade stock Lan–Dale was ultimately entitled to, was fraudulently altered.

After the passage of significant time, and investigations had been undertaken and completed, the parties entered into a settlement agreement on January 18, 2000 ("2000 settlement agreement") in an attempt to definitively resolve their dispute. This settlement agreement superceded the original 1992 agreement, and extinguished all claims emanating therefrom. It is the 2000 settlement agreement, and its alleged resulting breach, that gives rise to the case at bar.

The amended complaint at bar avers that the government violated the 4th, 5th, and 14th amendments by unlawfully retaining the airplanes that the settlement agreement allegedly confers to plaintiff. In addition, plaintiff alleges that it has incurred approximately $8,000,000 in damages flowing from the government's alleged breach of the settlement agreement, the Award/Contract, and Bills of Sale. The relief sought here at bar by plaintiff is specific performance[3] of the settlement agreement, and damages for breach thereof.

## II. The Applicability of 28 U.S.C. § 1500.

On December 18, 2003, plaintiff filed an action in this court (the complaint was subsequently amended). Plaintiff also filed on that same day a similar, related action in the United States District Court for the District of Arizona. Both actions arise out of the same set of operative facts, and the relief requested in the case before this court is, in essence, identical to the relief prayed for in

---

**2.** The Museum also gave Lan–Dale title to several small items in the first part of the 1992 contract.

**3.** Worded as "enforcement of the Settlement Agreement," the relief requested and sought is

clearly specific performance of the contract, i.e., the transfer of the airplanes. (1st Am. Compl. p. 35.)

the complaint before the United States District Court for the District of Arizona.[4]

Per 28 U.S.C. § 1500, this court is without jurisdiction to entertain:

> any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit, or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

■ The rationale behind § 1500 is to prevent duplicative (and simultaneous) litigation against the United States and its officers. *See, Matson Navigation Co. v. United States,* 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1932). To promote judicial economy and to prevent plaintiffs from forcing the United States to defend itself in multiple fora regarding the same issue, a potential plaintiff "must carefully assess his claims before filing and choose the forum best suited to the merits of the claims and the applicable statutes of limitations." *UNR Indus., Inc. v. United States,* 962 F.2d 1013, 1021 (Fed.Cir. 1992). Further, identity of claims for § 1500 purposes is construed rather broadly, such that a core of operative facts in common— even when different legal theories underlie the two actions—triggers § 1500, and thus, deprives this court of jurisdiction. *Keene v. United States,* 508 U.S. 200, 212, 113 S.Ct.

2035, 124 L.Ed.2d 118 (1993) (citing *British Am. Tobacco Co. v. United States,* 89 Ct.Cl. 438, 1939 WL 4266 (1939)). The test for identity of claims is *not* complete merely upon a finding of identity of operative facts; for identity of claims to apply such that § 1500 is triggered, the two actions must *also* share identity of requested relief. *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545 (Fed.Cir.1994) (takings claim for monetary damages arising from the denial of a permit allowed to proceed, even though the validity of the denial of the permit was pending before another federal court).

■ As noted, *supra,* the relief requested in the instant case is virtually identical to the relief requested in the case pending in the District Court in Arizona. These differences are, in essence, limited to different wording, as compared in footnote 5 *supra.* The primary difference in the relief requested here as opposed to the relief sought in the district court is that here, the plaintiff asserts an entitlement to $8,000,000.00 in damages,[5] while in the district court, the two demands for monetary relief are unaccompanied by a demand for a sum certain. We determine that the mere omission of a precise amount sought as monetary relief is a superficial aspect of the relief sought, and we determine that this "distinction" is too subtle to defeat an identity of relief analysis per § 1500. Consequently, both identity tests are met. Thus, due to plaintiff's improvident attempt to cover all of its bases several times over,[6]

---

**4.** The case filed in this court seeks "enforcement of the Settlement Agreement" (i.e., specific performance) and damages for breach of contract. The contract damages noted in the complaint are seemingly based upon the settlement agreement as well as the original contract. Similarly, the case filed in the United States District Court for the District of Arizona seeks "an order requiring the government to release to Lan–Dale the five T–39Ds..." (i.e., specific performance of the settlement agreement), "return of all funds extorted from Lan–Dale by AMARC" (i.e., money damages for breach of the settlement agreement), and "reimbursement of loss of profits arising out of Lan–Dale's inability to pursue its legitimate business interests absent possession of its property" (seemingly, i.e., money damages for breach of the settlement agreement). Both complaints seek attorney fees; the Arizona case also seeks injunctive relief. As the case filed before this

court makes no such demand, the injunctive demand is not relevant to the § 1500 analysis.

**5.** Plaintiff seems to base a portion of this figure on the 1992 contract. As noted above, the only contract that provides plaintiff with viable grounds for any action is the 2000 settlement agreement, as that agreement contains a comprehensive release of claims arising from the 1992 agreement.

**6.** Plaintiff has noted on a facsimile cover sheet that it sent to chambers along with a copy of the Arizona filings that a dismissal of the Arizona action is pending. That fact does not assist our analysis. Subsequent dismissal of the other action (by voluntary dismissal or otherwise) cannot revive jurisdiction where there was none at the time of filing the action in this court. *Keene,* 508 U.S. at 207, 113 S.Ct. 2035.

we hold that 28 U.S.C. § 1500 operates, on this record, to defeat our jurisdiction.

III. Defendant's Motion for Dismissal for Failure to State a Claim and Motion to Strike

As we find ourselves without jurisdiction to hear this action per 28 U.S.C. § 1500, we do not reach these issues.

IV. Conclusion

The Clerk of the Court shall hereby dismiss this matter, without prejudice, pursuant to 28 U.S.C. § 1500, and enter judgment accordingly.

IT IS SO ORDERED.

### OPINION ON PLAINTIFF'S MOTION FOR RECONSIDERATION

On February 13, 2004, this court issued an opinion on defendant's January 9, 2004 Motion to Dismiss the subject case. Therein, we concluded that we were without jurisdiction to hear the subject case, in view of 28 U.S.C. § 1500. On March 1, 2004, plaintiff Lan–Dale filed a motion for reconsideration of our February 13, 2004 opinion per Rule 59(a)(1),[1] alleging, *inter alia*, that manifest injustice will result from said dismissal. On March 8, 2004, the defendant filed its response to plaintiff's motion for reconsideration, arguing that the plaintiff failed to point to a "manifest error of law, or mistake of fact" that would entitle plaintiff to prevail on its motion for reconsideration. *Strickland v. United States*, 36 Fed.Cl. 651, 657 (1996) (citations omitted). On March 29, 2004, this court directed the parties to brief an issue we believe relevant to plaintiff's motion for reconsideration, namely, the applicability of 28 U.S.C. § 1631. We have reviewed the responsive briefs of both parties, and for reasons discussed below, we DENY plaintiff's motion for reconsideration in part, and GRANT plaintiff's motion in part.

In our February 13, 2004 opinion, we dismissed the subject case per 28 U.S.C. § 1500, which states:

Pendency of claims in other courts: The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit, or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. Applying this statute, and the relevant caselaw interpreting same, to the facts in the record, we determined that we lacked jurisdiction to hear this action. This is so because, on the day this action was filed in our court, plaintiff had simultaneously[2] filed another action in the U.S. District Court for the District of Arizona. The binding caselaw interpreting 28 U.S.C. § 1500 construes simultaneous filings, such as we have here at bar, to trigger the operation of § 1500. *County of Cook*, 170 F.3d at 1091 ("we hold that the 'filing' of the same claim simultaneously in the district court and the Court of Federal Claims...deprives the latter court of jurisdiction pursuant to § 1500.").

1. A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment. R.C.F.C. 59(a)(1).

2. The evidence adduced by plaintiff showed that the U.S. District Court for the District of Arizona case was filed on the same day, and plaintiff's counsel made no argument and proffered no evidence to support the proposition that the instant case was filed first. Consequently, without any evidence tending to establish that one case was first filed, and the unwillingness of plaintiff to even raise the argument that the case before us was filed *prior to* the filing in the U.S. District Court for the District of Arizona, we concluded that the instant case was filed simultaneously with the case in the district court. Thus, we found § 1500 was implicated based on the contemporaneous filing before the U.S. District Court for the District of Arizona. *See, United States v. County of Cook, Illinois,* 170 F.3d 1084, 1091 (Fed.Cir.1999).

Since we determined that § 1500 clearly applies to simultaneous filings, we were required to analyze the two actions and conduct an "identity of claims" analysis. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed.Cir.1994). In our February 13, 2004 opinion, we did so, and we found that both cases shared a single core of operative facts, and both requested relief of the same nature. *See*, Feb. 13, 2004 Slip Op., no. 03–1956C. Thus, we concluded that we lacked jurisdiction over the subject action, and accordingly dismissed said action, as we were constrained to do.

Regarding the instant motion for reconsideration, plaintiff fails to point to any mistake of law or fact by this court. Instead, plaintiff merely alleges that a manifest injustice will occur if plaintiff's case is dismissed from this court. This is so because, according to plaintiff, the statute of limitations for this action has run, and plaintiff has already voluntarily dismissed its action from the U.S. District Court for the District of Arizona. Consequently, plaintiff asks us to follow the dissenting opinion of Justice Stevens in *Keene Corp. v. United States*, 508 U.S. 200, 219, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), wherein Justice Stevens opines that 28 U.S.C. § 1500 should be interpreted to allow for cure of the jurisdictional defect upon dismissal of the duplicative action in the district court. P's Mot. for Reconsid. at p. 3. That we cannot do, because, no matter how "fair" such a construction of § 1500 may be, we are constrained by, and cannot disregard, obligatory precedent. The basic tenet of *stare decisis* must guide our actions, and thus, we must disregard plaintiff's urgings to the contrary.

While we cannot impute jurisdiction where we clearly lack same, we are not entirely without recourse in the instant action. When we filed our February 13, 2004 opinion, we had before us only plaintiff's assertion that it was *in the process of* dismissing the duplicate action then pending in the U.S. District Court for the District of Arizona. Today, however, we have the January 22, 2004 order of said dismissal in hand. Thus, when we issued our February 13, 2004 opinion, there was no need to consider the application of 28

U.S.C. § 1631. This statute states, in relevant part:

> Transfer to cure want of jurisdiction. Whenever a civil action is filed in a court...and that court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed....

(emphasis added)

At present, we feel that the dismissal of the action from the U.S. District Court for the District of Arizona implicates 28 U.S.C. § 1631. This is so because, while the entire action is barred from proceeding in this forum, some-but not all-of the claims therein may be properly heard in another court, namely, the U.S. District Court for the District of Arizona. Thus, we may be able to render plaintiff some limited assistance via 28 U.S.C. § 1631. Said section allows us to transfer claims over which we lack jurisdiction to a court wherein jurisdiction is proper.

The plain language of § 1631 permits transfer of "cases" and makes no express mention of individual claims that are part of a larger action. Somewhat recently, however, the U.S. Court of Appeals for the Federal Circuit squarely addressed this issue, finding that:

> Congress clearly recognized that a transfer of an action under § 1631 may be granted in whole or in part....[and there is] no logical reason why this remedy should not be allowed on a claim-by-claim basis....We see no reason to deny the remedial benefit of § 1631...merely because some of the claims were properly lodged in the transferor court.

*County of Cook*, 170 F.3d at 1089 (internal citations omitted). Consequently, we conclude that if we determine that (I) we lack jurisdiction over the case (or one or more of the claims included therein), and (ii) another court has a jurisdictional basis to hear the case (or claim(s)), and (iii) the transfer is in the interest of justice, we may properly transfer the case and/or claim(s) contained in this action over which we *lack* jurisdiction, and over which another court has an ade-

quate jurisdictional basis.[3] Here, having determined that § 1500 deprives us of jurisdiction over the entire matter, the first prong of the test for the applicability of § 1631 has been satisfied. Thus, we must next determine which of the instant claims, if any, may be properly heard in another court.

The claims presented to this court seek "enforcement of the Settlement Agreement" (i.e., specific performance) (Count I), and damages for breach of contract (Count II).[4] Count I, seeking "enforcement of the Settlement Agreement" is another matter, as the remedy sought is specific performance, *i.e.,* equitable relief. Parties seeking equitable relief may not do so before this court, except where specifically permitted by the Tucker Act.[5] The specific performance of a contract does not fall within these exceptions. Claims seeking such relief are properly heard in the district courts. Of course, at the time we decided this matter in February, this court believed that the U.S. District Court for the District of Arizona had an identical claim then pending before it. The plaintiff's motion to dismiss the Arizona action was presented to us, but the Arizona court's order had not been issued when the plaintiff filed its opposition to the defendant's motion for dismissal, and plaintiff failed to supplement its opposition with the dismissal order when it was issued on January 22, 2004. Thus, for our purposes and at that time, the specific

performance claim was still pending before the U.S. District Court for the District of Arizona, thus, transferring an identical claim back to that same court served no productive purpose. As we now know that no other similar claims are pending, in light of plaintiff's voluntary dismissal effected on January 22, 2004, and that the U.S. District Court for the District of Arizona has a jurisdictional basis to hear this claim,[6] whereas we do not, we conclude that the transfer of Count I to the U.S. District Court of the District of Arizona is permissible under § 1631.

Count II of the complaint before this court seeks damages for breach of contract totaling approximately $8,000,000.00. Because this claim is for money damages arising from a contract with the United States, and the amount in controversy exceeds $10,000.00, we are the only forum that may properly hear this claim, pursuant to 28 U.S.C. § 1491 (the "Tucker Act") and 28 U.S.C. § 1346(a)(2) (the "little Tucker Act," which confers jurisdiction to the district courts, concurrent with our jurisdiction, for claims for money damages where the amount in controversy does not exceed $10,000.00). And, as noted herein, and in this court's February 13, 2004 opinion, said claim is barred through the operation of 28 U.S.C. § 1500. Consequently, and unfortunately, the claim for damages, at this posture, is not redressable before this court, nor any other. Thus, we may not

---

**3.** Although the defendant was invited to argue against the applicability of 28 U.S.C. § 1631 to the transfer of a single count of the complaint, defendant failed and refused to address this issue. Thus, we can only conclude that the defendant concurs with this court's assessment of the law as permitting the transfer under § 1631 of less than all of the claims presented to a court, as here.

**4.** It is important here to note that the enumerated claims (Count I and Count II) are not completely clear. Count I alleges violations of various agreements between the parties—violations that plaintiff asserts in turn violate the 4th, 5th, and 14th Amendment rights of plaintiff. This count is worded to invoke the equity jurisdiction of the court, based on the alleged violation of the contracts between the parties, and we determine that it does so, and thus forms the basis for plaintiff's prayer for specific performance (contained in plaintiff's prayer for relief). Count II also alleges violations of various contracts between the parties as the foundation for this

claim, but here, the remedy sought is $8,000,000.00 in monetary damages.

**5.** An example of our limited equitable jurisdiction can be found in the bid protest arena, as permitted pursuant to 28 U.S.C. § 1491(b)(1)-(2). It is also within our authority to reinstate government employees and/or reinstate retirement benefits to government employees when we adjudicate wrongful termination claims. 28 U.S.C. § 1491(a)(2).

**6.** Here again, the defendant had an opportunity to challenge our determination that the U.S. District Court for the District of Arizona has an adequate jurisdictional basis to hear this claim. Defendant chose not to do so. Instead, defendant bases its objection to this court's transfer of Count I of the complaint to the U.S. District Court for the District of Arizona on its allegation that plaintiff has failed to state a claim upon which relief may be granted. The validity of this argument is addressed in text, *infra.*

transfer said claim via § 1631, and plaintiff's motion for reconsideration of our dismissal of Count II is hereby DENIED.

As we determined that Count I may be transferred via § 1631, we move to the last step in our analysis. Specifically, we must determine whether or not the interest of justice will be served by the transfer. To that end, we turn first to the legislative intent underlying the statute. We conclude that the purpose of 28 U.S.C. § 1631 is to assist litigants rightfully confused by the complexities of the special jurisdictional provisions of the federal courts, and to preserve an action, filed within the statute of limitations, from becoming time-barred because of delays incurred due to improper filing. *County of Cook,* 170 F.3d at 1089 (quoting S.Rep. No. 97–275, at 30 (1981)). In this case, there is no allegation that the statute of limitations expired before the filing date of the action in this court on August 21, 2003. And, as the plaintiff alleges that its action would be time-barred if plaintiff filed anew today, failure to apply § 1631 to this case would clearly contravene this legislative intent, as well as provide the defendant with an even greater advantage that it has already by virtue of the protections of sovereign immunity. Thus, we find that the interest of justice is served by the transfer of Count I to the U.S. District Court for the District of Arizona.

Defendant argues to the contrary, contending that Count I fails to state a claim upon which relief may be granted. Defendant bases this argument on the Settlement Agreement between the parties, and alleges that plaintiff waived any right to raise any claims for violations of the Settlement Agreement in the Settlement Agreement itself. Thus, defendant argues,"it is unlikely that Lan–Dale can establish a colorable claim in district court." D's Brief on § 1631, at 3–4.

We conclude that interpreting the right to enforce claims under the Settlement Agreement is a determination on the merits, as such a finding is tantamount to a dismissal with prejudice. As we do not have subject matter jurisdiction over this claim, we do not have the authority to reach such a determination. Moreover, upon the transfer of

Count I to a court of competent jurisdiction, defendant will have the ability to assert this argument. While we would agree that transferring a claim that absolutely cannot be heard would be an inefficient exercise, here, we fail to find any unequivocal grounds that would bar this case from proceeding such that transfer undermines the interest of justice.

For the foregoing reasons, and in the interest of justice, we hereby GRANT plaintiff's motion for reconsideration in part, that is to say with respect to our previous dismissal of Count I. Accordingly, we VACATE our February 13, 2004 opinion with respect to Count I, and hereby enter a new judgment on this claim, transferring Count I to the United States District Court for the District of Arizona, pursuant to 28 U.S.C. § 1631. Plaintiff's motion for reconsideration of our February 13, 2004 opinion is DENIED in part, that is with respect to our prior dismissal of Count II. The Clerk of the Court shall therefore enter a new judgment accordingly.

IT IS SO ORDERED.